UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**APRIL M. WILLIAMS,**

      **Plaintiff,**

**-vs-**                 **Case No.  6:13-cv-464-Orl-36DAB**

**COMMISSIONER OF SOCIAL
SECURITY,**

_____

# Memorandum Opinion & Order

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying her claim for Disability Insurance Benefits and Supplemental Security Income ("SSI") under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case. Oral argument has not been requested.

For the reasons that follow, the decision of the Commissioner is **REVERSED** and **REMANDED**..

## I. BACKGROUND

### A. Procedural History

Plaintiff filed for a period of disability, disability insurance[1] and SSI benefits on June 7, 2010, alleging an onset of disability on December 31, 2007, due to connective tissue disease, rheumatoid

---

[1] Date of last insured is June 30, 2011. R. 172.

arthritis, spondylosis, scoliosis, polyarthralgia, and back issues. R. 63, 113-25, 148-52. Her application was denied initially and upon reconsideration. R. 56-71. Plaintiff requested a hearing, which was held on October 22, 2010, before Administrative Law Judge Janet Mahon (hereinafter referred to as "ALJ"). R. 27-42. In a decision dated September 1, 2011, the ALJ found Plaintiff not disabled as defined under the Act through the date of his decision. R. 7-26. Plaintiff timely filed a Request for Review of the ALJ's decision. R. 4-6. The Appeals Council denied Plaintiff's request on January 16, 2013. R. 1-5. Plaintiff filed this action for judicial review on March 22, 2013. Doc. 1.

### B.     Medical History and Findings Summary

At the time of the hearing, Plaintiff was thirty-four years of age, and had obtained her GED. R. 30. She had past relevant work of a nurse assistant, a cashier, and a telephone solicitor which were classified as medium, light and sedentary, respectively. R. 39.

Plaintiff's medical history is set forth in detail in the ALJ's decision. By way of summary, Plaintiff complained of scoliosis, rheumatoid arthritis, connective tissue disease and other back problems. R. 33, 152. After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from diffuse connective tissue disorder and rheumatoid arthritis, which were "severe" medically determinable impairments, but were not impairments severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 12-13. The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform less than the full range of light work. R. 13. Based upon Plaintiff's RFC, the ALJ determined that she could not perform past relevant work. R. 20. Considering Plaintiff's vocational profile and RFC, the ALJ applied the Medical-Vocational Guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2, and, based on the testimony of the vocational expert ("VE"), the ALJ concluded that Plaintiff could perform work existing in significant numbers in the national economy as a counter clerk, housekeeper

cleaner, and food distributor. R. 21. Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision. R. 22.

Plaintiff now asserts two points of error. First, she argues that the ALJ erred by finding she had the RFC to perform light work contrary to consultative examining physician's opinion. Second, Plaintiff contends the ALJ erred by improperly evaluating her credibility. For the reasons that follow, the decision of the Commissioner is **REVERSED** and **REMANDED**.

## II.    STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery*

*v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f).

## III. ISSUES AND ANALYSIS

### A. RFC and the consultative examiner's opinion.

Plaintiff argues that the ALJ erred in determining that she had the RFC to perform light work when the consultative examining physician concluded that Plaintiff could not perform that level of work. The Commissioner argues the ALJ did not reject any medical opinion of record but, instead, relied on treatment notes from Plaintiff's treating rheumatologist Dr. Gopal Basisht and primary care physician Dr. Usha Patel as well as the opinions of examining physicians Dr. Lois Somerville and Dr. Alvan Barber and non-examining physician Dr. Loc Kim Le which supported the ALJ's finding that Plaintiff could perform light work.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*,

125 F.3d 1436,1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Id.* Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis*, 125 F.3d at 1440; *Edwards*, 937 F.2d at 583; 20 C.F.R. §§ 404.1527(d), 416.927(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

> The ALJ made the following RFC determination:
>
> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant could lift and/or carry 20 pounds occasionally and 10 pounds frequently; sit, stand and/or walk 6 hours in an 8-hour workday; and occasionally stoop and crouch.

R. 13. The ALJ determined Plaintiff could perform no past relevant work. R 20. The ALJ then proceeded to Step 5 of the sequential evaluation and relied on the testimony of a vocational expert to conclude that Plaintiff was not disabled. R. 21-22.

Plaintiff argues that the ALJ erred in finding she could perform light work which requires "standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday," SSR 83-10, when Dr. Barber, the consultative examining physician, opined on September 13, 2010 that Plaintiff "can not walk and stand for long periods of time." R. 258. He diagnosed Plaintiff with connective tissue disorder and rheumatoid arthritis, on medication for both, under the care of Dr.

-5-

Patel. R. 258. Dr. Barber also diagnosed Plaintiff with lumbar DSD with low back pain, on medication, under the care of Dr. Patel. R. 258. Although the ALJ stated that she gave Dr. Barber's opinion "significant weight" (R. 20), she did not find that Plaintiff had the severe impairment of lumbar DSD (or explain why it was not severe), and did not include the restriction on Plaintiff's ability to "walk and stand for long periods of time" in Plaintiff's RFC. R. 258. Instead, the ALJ relied exclusively on the RFC opinion of the State Agency non-examining physician, Dr. Le, who opined Plaintiff could perform light work. R. 20. In giving *both* Dr. Barber's opinion and Dr. Le's opinion "significant weight," the ALJ failed to discuss or reconcile the inconsistency between Dr. Barber's opinion that Plaintiff "cannot stand or walk for long periods" and Dr. Le's opinion that Plaintiff could stand/walk for 6 hours in an 8-hour workday. R. 263.

Moreover, the examining physician's opinion in entitled to more weight than the opinion of the non-examining physician. *McNamee v. Soc. Sec. Admin.*, 162 F. App'x 919, 923 (11th Cir. Jan. 31, 2006) (unpublished) (citing 20 C.F.R. § 404.1527(d)). Although the Commissioner recognizes that the examining physician, Dr. Barber's opinion is entitled to more weight, the Commissioner argues essentially that Dr. Le's opinion deserved more weight because he was the physician "who provided the only medical source statement of record that detailed clear, functional limitations based his review of Plaintiff's medical records." R. 262-69.

To the contrary, the opinion of Dr. Barber, who understood that he was performing a consultative examination to determine the impact of Plaintiff's impairments on her ability to work, that Plaintiff could not walk/stand for long periods was specific enough to be considered by the ALJ as precluding 6 hours of walking/standing. The Commissioner's argument that Dr. Barber's opinion on walking/standing does not conflict with the ALJ's RFC because Dr. Barber "did not define 'long periods of time' or otherwise indicate that Plaintiff could not stand, off and on, for 6 hours in an 8-hour day" is without merit. Six hours out of an eight-hour day constitutes "a long time."

-6-

The Commissioner contends that any error by the ALJ in assessing Plaintiff's ability to walk for prolonged periods is harmless because the ALJ's finding regarding light work included a finding that Plaintiff could also perform the less demanding requirements of sedentary work, which would only require standing/walking for two hours out of an eight hour day. R 21-22. The Commissioner argues that Plaintiff has failed to cite any medical opinion that would contradict the ALJ's finding that Plaintiff could also perform sedentary work; therefore, even if Plaintiff's interpretation of Dr. Barber's opinion were to prevail, substantial evidence still supports the ALJ's finding that Plaintiff could perform other jobs in the economy as a surveillance system monitor, call out operator, and food and beverage clerk. R. 21-22.

In discussing Plaintiff's RFC, the ALJ accurately restated the content of Plaintiff's medical records, however, in discussing the records, the ALJ failed to appreciate or distinguish the exacerbation of Plaintiff's symptoms after her *second* car accident in October 2010. R. 19-20. The ALJ relied on the RFC opinion of the non-examining physician, Dr. Le, who opined on October 2, 2010 that Plaintiff had the RFC to perform light work. R. 263. However, Dr. Le's opinion was rendered about ten days before Plaintiff was involved in a second car accident and received treatment for a spinal injury. R. 278-80. The ALJ did not acknowledge or discuss the impact of the exacerbation in Plaintiff's symptoms or limitations post-October 12, 2010.

Plaintiff had longstanding pain in her lower back and hips, receiving minor relief from prescribed medication according to the treatment notes. R. 244-45. Plaintiff was described by her family physician as having developed a gradual onset of the low back pain over a period of ten years, with a history of rheumatoid arthritis, connective tissue disease and scoliosis. R. 301. In May 2008 and February 2009, Plaintiff was seen by her family physician for pain in her lower back and both hips; she was subsequently referred to a rheumatologist, Dr. Basisht, who first saw her in April 2009 for pain in her back radiating into her neck, shoulders and legs. R. 210, 244. Plaintiff had tenderness

-7-

of the right sacrococcygeal and right parasacral region, as well as trigger point tenderness; Dr. Basisht diagnosed Plaintiff with polyarthralia, fibromyalgia, and parasacral and sacrococcygeal tenderness. R. 211. He administered an injection of Depo-Medrol with Xylocaine in the sacrococcygeal and right parasacral tendons, and gave her a prescription for Clinoril, and blood tests. R. 211. On April 15, 2009, Plaintiff returned to Dr. Basisht indicating that her back pain was somewhat better. R. 209. The blood testing indicated that Plaintiff had a positive ANA speckle pattern and a high sed rate. R. 209, 212-13. Dr. Basisht diagnosed Plaintiff with polyarthralgia and undifferentiated connective tissue disease; he instructed Plaintiff to continue taking Plaquenil and begin taking Clinoril. R. 209. Plaintiff reported on June 17, 2009 that she was experiencing complete relief in the pain in her lower back, but was now experiencing similar pain in the back of her legs. R. 208. Plaintiff had mild tenderness in the legs, but no inflammation; Dr. Basisht instructed her to continue with Clinoril and Plaquenil and sesame oil massage. R. 208.

The Commissioner argues that, after treatment with Dr. Basisht by June 2009, Plaintiff's severe back pain improved and did not last for the "12 consecutive months" as required under the Social Security Regulations, but instead, improved, and new complaints of pain in her legs were described as "mild" without inflammation and with a normal range of motion. R. 208.

On August 7, 2009, Plaintiff was in her first of *two* car accidents, and she went to the emergency room with complaints of neck pain; she had mild muscle spasm in the right posterior neck, and mild tenderness in the right lower and left thoracic area; she was diagnosed with thoracic strain and a cervical strain. R. 222-23. In October 2009, Plaintiff returned to Dr. Basisht complaining of musculoskeletal pain and pain in her joints, especially in her lower back. R. 207. Dr. Basisht again diagnosed Plaintiff with polyarthralgia and undifferentiated connective tissue disease, and advised Plaintiff to continue with her current medications. R. 223. Plaintiff returned to her family physician at Associated Family Medicine several times from May to August 2010 complaining of pain in her

thoracic region, her neck and lower back as well as pain from pain from connective tissue disease; her medications were continued.  R. 237-39, 271-75.

On referral from the Social Security Administration, Dr. Barber performed his consultative examination of Plaintiff on September 13, 2010. R. 254-60.  At the consultative examination, Plaintiff complained of a sharp constant pain in her lower back, with occasional radiation into the buttocks and medial thighs and hips; none of the pain medications seemed to help the pain except oxycodone.  R. 301. Dr. Barber noted Plaintiff had positive low paravertebral muscle spasms and positive point tenderness in the right and left S1 joint; Plaintiff walked with a guarded gait, and was unable to walk on toes or heels; he diagnosed Plaintiff with connective tissue disorder; a history of rheumatoid arthritis; lumbar degenerative joint disease; and obesity. R. 257-58. Dr. Barber opined that Plaintiff could not walk and stand for long periods of time; can sit for reasonable periods of time; is obese and symptoms are possibly exacerbated by excessive weight; and could use upper body movements and coordinated activities with hands. R. 258.  The non-examining physician, Dr. Le, had Dr. Barber's report when he completed his RFC assessment on October 2, 2010, and Dr. Le opined that Plaintiff could walk/stand for 6 hours out of 8 hours.  R. 263.

However, just ten days later, on October 12, 2010, Plaintiff was involved in a *second* car accident which caused damage to Plaintiff's spine.  Plaintiff started treatment with a chiropractor the day after the accident, and continued to treat with the chiropractor until November 2010.  R. 278.  A MRI was performed on December 9, 2010 revealed a central annular tear, which abuts the thecal sac and the right S1 nerve root; a disc bulge with anterior impression on the thecal sac was noted at L4-5. R. 282. From February to April 2011, Plaintiff saw her primary care physicians[2] continuing to complain of lower back pain, at the level of a 6-7 out of 10, and the doctor noted severe lumbar

---

[2] Associated Family Medicine (Dr. Patel) and Premier Wellness Consultants.

-9-

muscle spasm and tenderness; she was diagnosed with chronic pain syndrome and lumbar pain and prescribed Oxycodone for pain. R. 295-98.

Lois Somerville, a chiropractor, of Advance Chiropractic Clinic, performed an "IME" for Southern Diagnostic Associates – a medical claims consulting firm[3] – on January 17, 2011, opining that "further chiropractic or diagnostic testing is not reasonable, necessary or related for the treatment of injuries from the October 12, 2010 auto accident. R. 283-88. The chiropractor noted mild inflammation palpated in the right cervical musculature of the neck and upper trapezius muscle, and mild point tenderness at the mid-back muscles and spinous at T-6; mild point tenderness at the right lumbar muscles and mild inflammation palpated at the level of the right sacroiliac spine. R. 285. The straight leg raise test elicited pain, and there were positive other tests and mild restrictions in the range of motion of the neck, and mild fixation at C-6, T-6, and L-5. R. 286-87. The chiropractor stated she reviewed the medical records from Masters Chiropractic but did not mention or discuss the MRI of the lumbar spine performed on December 9, 2010, and it is not attached to Somerville's report. R. 283-89.

Generally, a chiropractor is not an acceptable medical source upon which the ALJ has to rely, but is merely classified as another source of information that may be considered; the ALJ has the responsibility for assessing and determining RFC at the hearing level. *See* 20 C.F.R. §§ 416.913(d)(1) (statements from chiropractors *may* be considered by the ALJ). Here, the chiropractor was evaluating Plaintiff in connection with continued care resulting from the October 12, 2010 car accident and was hardly unbiased in assessing Plaintiff with "mild" symptoms. While the ALJ did not make it clear that she relied on Somerville's opinion, she did quote it at length without any recognition that the report might be biased (R. 18-19).

---

[3]www.sdaime.com/home.htm (visited on January 30, 2014).

-10-

On referral from her primary care physician, Plaintiff began treatment with a pain management specialist at Florida Pain Solutions, Dr. Flaz Jaleel, on July 27, 2011. R. 301. Plaintiff complained of continued low back pain radiating into her buttocks and medial thighs and hips. R. 301. During the physical examination, a decreased range of motion was noted in the lumbar spine, tenderness in the lumbar spine, tenderness in the lumbar paraspinal muscles, and pain on forward flexion as well as extension. R. 302. Plaintiff was assessed with chronic low back pain; lumbar degenerative spine with decreased range of motion; lumbar radiculopathy; and a history of rheumatoid arthritis, and she was prescribed the pain medications, Norco, Gabapentin and Ibuprofen. R. 302.

In her discussion of Plaintiff's limitations and RFC, the ALJ gave significant weight to the examination findings of Dr. Barber dated September 19, 2010 and the non-examining state agency physician, Dr. Le, dated October 2, 2010, which stated that Plaintiff could "sit, stand and/or walk 6 hours in an 8-hour workday" (R. 20 (citing Ex. 5F)), and failed to discuss the impact of the subsequent MRI results from December 2010 following the second accident on October 12, 2010.

The Commissioner argues that post-accident "treatment notes reveal no ongoing limitations more restrictive than the limitation to light work" based on carefully picked portions of the treatment records that the ALJ did not discuss. Doc. 20. Instead, in assessing Plaintiff's RFC and limitations, the ALJ tellingly limited her discussion to treatment records from pre-2010:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment.
> \* \* \*
> The claimant complained of pain in the neck, back, and multiple joints. Her symptoms are reasonably attributable to a medically determination [sic] impairment. She has a history of connective tissue disorder, rheumatoid arthritis, and lumbosacral spine degenerative disk disease. The claimant exhibited reasonable credibility in her description of mild limitations to activities of daily living. . . . The claimant alleges mild to moderate pain controlled with prescription and non prescription medications. Treating physician and consultative examination showed *normal* general

-11-

>examinations, strong grip with full use of upper extremities, and independent gai. The record also reveals that X-ray of the thoracic spine revealed mild scoliosis and spodylosis. X-ray of the cervical spine from August 2009 showed no fracture or subluxation. X-ray of the thoracic spine from August 2009 showed no fracture or subluxation (Exh. 1F, 3F, 4F, 6F, 7F, 8F, 9F, 12F, 14F).

R. 20.

Although the ALJ listed the 2010 MRI among the medical records, she did not discuss it in her credibility finding, nor explain why she would discount it. Moreover, Plaintiff's examination's were not "normal," even if some of the findings were mild, others showed reduced range of motion, flexion, and/or tenderness or muscle spasm on examination. The ALJ erred in failing to account for the exacerbation of Plaintiff's symptoms from the second car accident and the findings in the December 2010 MRI. The ALJ also erred in relying on the pre-accident opinions of Dr. Barber and Dr. Le from September-October 2010 without ordering a new consultative examination and RFC review with the post-accident records. The ALJ's decision was not based on substantial evidence and must be **REVERSED** and **REMANDED.**

### B. Pain and credibility.

Plaintiff asserts that the ALJ erred in evaluating her subjective complaints, finding Plaintiff was not entirely credible as to the intensity, persistence, and limiting effects of Plaintiff's symptoms. R. 15. For the reasons explained above, the ALJ's failure to recognize the exacerbation of Plaintiff's impairments from the October 12, 2010 car accident in assessing her credibility was error. On remand, given Plaintiff's multiple impairments, the ALJ should determine whether a consultative examination by a rheumatologist would be preferred.

## IV.   CONCLUSION

For the reasons set forth above, the ALJ's decision is not consistent with the requirements of law and is not supported by substantial evidence. Accordingly, the Court **REVERSES and**

**REMANDS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on February 3, 2014.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record